UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEKSANDRE SAMUSHIA (A-Number: 249-260-654),

          Petitioner,

    v.

WARDEN OF THE BUFFALO DETENTION FACILITY,

          Respondent.

Case No.  1:26-cv-3495-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Aleksandre Samushia entered the United States in 2024 and was re-detained by ICE later that year.  Petitioner, now proceeding through counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

In January 2024, petitioner entered the United States, was briefly detained by immigration officials, and then was released on his own recognizance.  ECF No. 20-1 at 9.  There is no allegation or evidence that, between his release and re-detention, petitioner violated the terms of his release or committed any crime.  *See id*.

In October 2024, petitioner was re-detained by ICE after he was returned to the United States by Canadian officials.  *Id*. at 8.  Petitioner alleges that "while driving to look at a car to buy, [he] accidentally crossed into Canada."  ECF No. 1 at 2.  Government records provide a different account, indicating that Canadian officials communicated to their U.S. counterparts that

1

petitioner "tried to claim asylum in Canada."  *See* ECF No. 20-1 at 8.  ICE records also indicate that petitioner told ICE officials that he travelled to Canada to pursue asylum.  *Id*. at 11. Petitioner allegedly told ICE officials that "living in the United States was too difficult and he couldn't afford to live" in the country any longer.  *Id*.

Additionally, when petitioner was re-detained in October 2024, he allegedly told ICE officials about his background in Georgia.  Specifically, the government asserts that petitioner revealed that he "previously worked for the Georgian Ministry of Defense" and had "executed and killed two known terrorists in Georgia."  *Id*. at 2-3.  The government also alleges that petitioner "disclosed he had been in prison in Georgia for approximately 8.5 years from 2014-2022" and that "he spent 5.5 years of his sentence in isolation at a penitentiary ERO learned to be known for particularly serious offenses."  *Id*. at 2.  The record does not reveal what, if any, of this information the government learned when petitioner was initially detained and released in January 2024.  *See id*. at 9.

In December 2024, petitioner was afforded a bond hearing pursuant to 8 U.S.C. § 1226(a), at which the immigration judge denied bond based on the finding that petitioner "did not meet his burden" of demonstrating that he was neither a danger to the community nor a flight risk.  *Id*. at 70.

In November 2025, an immigration judge ordered petitioner removed.  *Id*. at 86. Petitioner appealed, and his appeal remains pending.  *Id*. at 89.  Accordingly, the order of removal is not final.  *See* 8 U.S.C. § 1101(a)(47)(B).

### Procedural History

On April 20, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus and a motion for temporary restraining order in the Western District of New York.[1]  ECF Nos. 1 & 2.  Thereafter, petitioner filed a motion to change venue to this district, the court granted this motion, and this case was transferred here on May 6, 2026.  ECF Nos. 5, 9, and 11.  On the

---

[1] Petitioner's motion for temporary restraining order remains pending.  ECF No. 2.  In light of my recommendation that the petition be granted and petitioner be afforded a bond hearing, this motion should be denied as moot.

2

following day, the court referred the matter to me for further proceedings.  ECF No. 13.  On May 26, 2026, respondent filed an answer.  ECF No. 20.  On May 2, 2026, petitioner, proceeding through counsel, filed a traverse.  The matter is deemed submitted.  *See* ECF No. 14 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a pre-deprivation hearing violates the Fifth Amendment.  ECF No. 1 at 2.  Respondent counters that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 20 at 2.  In asserting this statutory argument, respondents fail to acknowledge that this argument has been consistently rejected by courts in this District.  *See, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondents do not explain what, if any, binding precedent supports their statutory position.  Critically, respondent concedes that petitioner was afforded a bond hearing under section 1226(a); if petitioner was subject to mandatory detention, as respondent asserts, then it appears that there would have been no basis for the government to have afforded petitioner a bond hearing.  *See* ECF No. 20 at 2.  More fundamentally, respondents' focus is misplaced because they only address petitioner's due process claim through the lens of their statutory argument.

Courts analyze procedural due process claims in two steps: first, we consider whether

3

there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I

4

agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in January 2024. ECF No. 20-1 at 9. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of custody, for nine months. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in continued release that developed over the nine months between his release and his re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL

5

2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a pre-deprivation hearing is high. Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690). Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden that would fall on them as a result of being required to provide a pre-deprivation bond hearing. *See* ECF No. 20.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a pre-deprivation hearing violated his due process rights. Respondent seems to argue that because petitioner was provided a post-deprivation bond hearing, the court need not issue further relief. *See* ECF No. 20 at 2. However, this hearing did not comport with the requirements of due process. As noted, the immigration judge found that petitioner "did not meet

his burden as to danger" and "did not meet his burden as to flight." ECF No. 20-1 at 70. But because petitioner's re-detention implicates due process concerns, the government needs to show by clear and convincing evidence that he is a danger to the community. *See Martinez v. Clark* 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases). Accordingly, petitioner has not been provided a constitutionally compliant bond hearing.[2]

Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or, alternatively, a bond hearing. ECF No. 1 at 3. Respondent does not address this issue. *See* ECF No. 20.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Id*.; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody").

Before re-detaining petitioner, due process would ordinarily require a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). However, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d

---

[2] Respondent suggests, without providing any authority, that the burden allocation was harmless error. *See* ECF No. 20 at 4 n.2. Respondent argues that this court "has no reason to believe the outcome of [the] immigration judge bond hearing would be different if the Court were to remand with a different burden of proof." *Id*. However, this court's task is not to reweigh the evidence and determine how the immigration judge would have decided the issue of bond were the government required to prove danger or flight by clear and convincing evidence. Instead, because petitioner has not been provided a constitutionally compliant hearing, this court must issue an appropriate remedy.

1021, 1036 (N.D. Cal. 2025). For example, in *Martinez Hernandez v. Andrews*, the court held that, where the petitioner had allegedly violated his parole, a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025).

Here, as noted, petitioner allegedly told ICE officials that he "previously worked for the Georgian Ministry of Defense" and had "executed and killed two known terrorists in Georgia." ECF No. 20-1 at 2-3. The government also alleges that petitioner "disclosed he had been in prison in Georgia for approximately 8.5 years from 2014-2022" and that "he spent 5.5 years of his sentence in isolation at a penitentiary ERO learned to be known for particularly serious offenses." *Id*. at 2. Under these circumstances, I find that it is "at least arguable that providing [petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *12. Accordingly, the present record does not establish that petitioner was constitutionally entitled to a pre-deprivation hearing.

Due process still required, however, that petitioner be afforded a "prompt post-deprivation hearing." *See Guillermo M.R.*, 791 F. Supp. 3d at 1036. Petitioner, as noted, has not been afforded a hearing that comports with due process. Accordingly, I find that the appropriate remedy is a bond hearing at which the government bears the burden of showing, by clear and convincing evidence, that petitioner is a danger to the community or a flight risk. *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *15-16 (E.D. Cal. Oct. 16, 2025)).

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 249-260-654) be provided a bond hearing within seven days of

the date of the court's order.  At this hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner shall be allowed to have counsel present.

3.  Respondent be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4.  Petitioner's motion for temporary restraining order, ECF No. 2, be DENIED as moot.

5.  The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 11, 2026                                    _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE